# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 20-1488V
UNPUBLISHED

| | |
|---|---|
| JOHN MICHAEL DULANEY, | Chief Special Master Corcoran |
| Petitioner, | Filed: June 24, 2022 |
| v. | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | Special Processing Unit (SPU); Findings of Fact; Onset; Tetanus Diphtheria acellular Pertussis (Tdap) Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA) |
| Respondent. | |

*Bridget Candace McCullough*, Muller Brazil, LLP, Dresher, PA, for Petitioner.

*Ronalda Elnetta Kosh*, U.S. Department of Justice, Washington, DC, for Respondent.

## FINDINGS OF FACT[1]

On October 28, 2020, John Michael Dulaney filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he suffered a left shoulder injury related to vaccine administration ("SIRVA") resulting from the tetanus, diphtheria, pertussis ("Tdap") vaccine he received on August 13, 2018. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this unpublished Fact Ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Fact Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons discussed below, I find the onset of Petitioner's pain began within 24 hours of vaccination, consistent with the claim's Table element requirement.

## I.  Relevant Procedural History

Petitioner filed Exhibits 1-8, containing medical records and an affidavit, along with the petition on October 28, 2020 (ECF No. 1). Petitioner filed additional records as Exhibits 9 and 10 on March 30, 2021 (ECF No. 15). On December 6, 2021, Respondent filed a status report stating that he had completed his review of the records, and was amenable to informal resolution of the claim (ECF No. 26). The parties commenced negotiations, but could not come to agreement – resulting in Respondent's filing of a Rule 4(c) Report contesting compensation (ECF No. 31).

On June 9, 2022, a telephonic status conference was held discuss how to proceed in light of the Rule 4(c) Report. During the call, Respondent's counsel confirmed that Respondent's only objection was onset. The parties agreed that a fact ruling would be helpful, and that the issue of onset was ripe for resolution without briefing.

## II.  Issue

At issue is whether Petitioner's first symptom or manifestation of onset after vaccine administration (specifically pain) occurred within 48 hours as set forth in the Vaccine Injury Table and Qualifications and Aids to Interpretation ("QAI") for a Table SIRVA. 42 C.F.R. § 100.3(c)(10)(ii) (required onset for pain listed in the QAI).

## III.  Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence.  The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-

1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Hum. Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such fact testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical

records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### IV.  Respondent's Position

In his Rule 4 Report, Respondent argued that it was unclear when Petitioner's shoulder pain began. Rule 4(c) Report at 7. Respondent acknowledged that Petitioner reported shoulder pain at least as early as twelve days after vaccination, but argued that Petitioner had not shown that his shoulder pain began *within 48 hours* after vaccine administration. *Id.* Respondent dismissed records documenting shoulder pain 'since' or 'after' his Tdap vaccination as "nothing more than a record of petitioner's oral statements." *Id.* at 8. Respondent did not contest any other Table SIRVA criteria, however, and did not assert that any statutory requirements were not met.

### V.  Finding of Fact

I make the following findings after a complete review of the record, including all medical records, affidavits, expert reports, Respondent's Rule 4 Report, and additional evidence filed.  Specifically, I base the findings on the following evidence:

- An August 13, 2018 record showing that Petitioner received a Tdap vaccine in his left deltoid. Ex. 1 at 1.

- An August 25, 2018 record of an inpatient hospitalization for heart palpitations and irregular heartbeat, noting that Petitioner reported that he received a "Tdap vaccine 2 weeks ago to left arm and is now having pain to his *right* shoulder." Ex. 2 at 21, 35 (emphasis added).

- A record of a September 6, 2018 appointment with Dr. Victor Vela to follow up on his hospitalization for atrial fibrillation, as well as lab work and thyroid concerns. Ex. 3 at 12-14. Petitioner reported that he was feeling better, and needed lab work for his cardiologist. *Id.* at 14. The record does not indicate any shoulder complaints.

- An October 25, 2018 record of an appointment with Dr. Vela for left shoulder pain, at which Petitioner reported that his shoulder pain was getting worse. Ex. 3 at 10-12. Petitioner reported that when he received the injection, "it felt funny and bubbly inside" and pointed to his mid upper deltoid on the left side. *Id.* at 11. He added that one week after his Tdap vaccine, he "had fever and chills and achy and sore all over." *Id.* He stated that there were

4

certain left shoulder movements that caused sudden pain, and that his shoulder pain was getting worse compared to his September appointment. *Id.* Dr. Vela assessed Petitioner with an adverse reaction to a vaccine, indicating that an injection can cause localized muscle and joint pain. *Id.* at 12.

- A record of a November 1, 2018 orthopedic appointment with Dr. Casey Taber for left shoulder pain. Ex. 4 at 121. Petitioner reported that his left shoulder pain "started in August after receiving an injection in his arm . . . . [t]his was a tetanus injection." *Id.* at 122. Dr. Taber noted that Petitioner had "left shoulder pain following a tetanus injection about two months ago." *Id.* at 123. Dr. Taber diagnosed Petitioner with bursitis and arthritis, administered a steroid injection, and referred him to physical therapy. *Id.*

- A November 15, 2018 physical therapy evaluation record, documenting that Petitioner "received a tetanus/[diphtheria] vaccine in superior anterior shoulder and a week or so later was very sick while overseas" and was subsequently diagnosed with atrial fibrillation; Petitioner "attributes shoulder problem arising from injection in the wrong area and may have inflamed the bursa, vs intramuscular." Ex. 5 at 61.

- Petitioner's supplemental affidavit, averring that the August 13, 2018 tetanus vaccination felt "different than any other injection I have had." Ex. 10 at ¶ 2. He explained that it "felt as though 'bubbles' were being injected." *Id.* The following day, he experienced what he thought was the usual soreness. *Id.* at ¶ 4. By August 15, 2018, however, the pain in his left shoulder "had increased considerably." *Id.* at ¶ 5. He explained that he is a professional pilot and had an international trip coming up, and tried to put the pain out of his mind. *Id.* at ¶ 6. During the trip, he became ill, and when he returned, he was hospitalized for atrial fibrillation. *Id.* at ¶¶ 7-8.

The above medical entries show that Petitioner experienced left shoulder discomfort while the vaccine was being administered, and pain within 24 hours that progressed over time. I also find it significant that, while hospitalized for a heart condition that impacted his career, Petitioner reported his shoulder pain as well, even though it was a clearly-unrelated condition.[3] And while some complaints about initial pain may be

---

[3] Even though that record indicates that he reported right shoulder pain due to a vaccine injected in his left arm, this was likely a typographical error, since it was not repeated anywhere else in the filed record.

5

somewhat general in terms of their temporal beginning, they overall preponderate in favor of an onset consistent with the Table element's requirement.

Thereafter, Petitioner repeatedly and consistently reported pain in his left shoulder, which he related to the Tdap vaccine. While he did not seek care for his pain immediately, this is explained by his development of a heart condition serious enough to require hospitalization and impact his career, the treatment of which he prioritized. In any event, his delay in seeking treatment does not undercut the otherwise sufficient evidence that his pain was immediate (although it may have implications for the severity of his condition and thus damages).

Accordingly, I find there is preponderant evidence to establish that the onset of Petitioner's pain occurred within 48 hours of vaccination.

**Scheduling Order**

- **Respondent shall file, by no later than <u>Monday, July 25, 2022</u>**, an amended Rule 4(c) Report or status report indicating how he intends to proceed in light of this fact ruling.

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master